**Richard Milo HILL, Petitioner,**

v.

**John C. BURKE, Warden, Wisconsin State Prison, Respondent.**

**George Andrew BOYE, Petitioner,**

v.

**John C. BURKE, Warden, Wisconsin State Prison, Respondent.**

**Nos. 68–C–37(HC), 68–C–66(HC).**

United States District Court W. D. Wisconsin.

Sept. 16, 1968.

---

Curtis M. Kirkhuff, Madison, Wis., for petitioners.

Bronson C. La Follette, Atty. Gen., William A. Platz, Asst. Atty. Gen., Madison, Wis., for respondent.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

Each of the petitioners, presently incarcerated at the Wisconsin State Prison, seeks a writ of habeas corpus claiming that he is being detained in violation of his rights under the Constitution of the United States. Petitioners assert that § 959.15, Wis.Stats., commonly referred to as the Wisconsin Sex Deviate Act, deprives them of equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

Petitioner Hill was convicted on a plea of guilty on November 11, 1959, in the Circuit Court for Eau Claire County of the crime of rape in violation of § 944.01 (1), Wis.Stats. The maximum sentence for such a conviction is 30 years. The Circuit Court ordered Hill committed to the State Department of Public Welfare (presently the Department of Health and Social Services—hereinafter the Department) for a presentence social, physical, and mental examination pursuant to § 959.15(1), Wis.Stats. The Department recommended that Hill receive specialized treatment for his mental aberrations and he was committed by the Circuit Court to the Department on January 25, 1960, pursuant to § 959.15(6), Wis.Stats.

Petitioner Boye was convicted by a jury on April 30, 1959, in the Circuit Court for Sauk County of the crime of attempted rape in violation of §§ 944.01 (1) and 939.32(1), Wis.Stats. The maxi-

mum sentence for such a conviction is 15 years. The Circuit Court ordered Boye committed to the Department for a presentence social, physical, and mental examination pursuant to § 959.15(1), Wis. Stats. The Department recommended that Boye receive specialized treatment for his physical [1] and mental aberrations, and he was committed by the Circuit Court to the Department on July 6, 1959, pursuant to § 959.15(6), Wis.Stats.

Petitioners allege that § 959.15 deprives them of equal protection of the laws in that, having been committed under this section, they are foreclosed from judicial reexamination of their mental condition until the expiration of the maximum term prescribed by law for the respective offenses for which they were convicted, less "good time", § 959.15(12). This, they submit, deprives them of equal protection in two ways: (1) it deprives them of rights enjoyed by persons, alleged to be mentally ill, who are committed under the Mental Health Act, § 51.01 et seq., Wis.Stats., including those who have been committed after acquittal by reason of insanity under § 957.11, Wis.Stats.; and (2) it differentiates unreasonably between themselves and persons who have been committed under the same section, but who were convicted of different sex crimes. Furthermore, petitioners appear to claim that § 959.15 denies equal protection by expressly denying the right to jury trial when the Department makes application for extended control. In addition to these claims, Boye alleges that the failure of prison authorities to credit him with "industrial good time" denies him equal protection of the laws.

Leave was granted to file the petitions *in forma pauperis*; respondent was directed to respond; and responses were filed. Curtis M. Kirkhuff of Madison was appointed as attorney for petitioners. The court expresses its appreciation

---

1. The court recognizes that there may be a distinction between physical and mental aberrations. This distinction has no significance for the purposes of this case. Accordingly, throughout this opinion reference is made only to "mental aberrations". This term includes "physical aberrations" for the purposes of this decision.

to Mr. Kirkhuff. The two cases were consolidated for argument on the question whether § 959.15, Wis.Stats., works upon petitioners an unconstitutional deprivation of equal protection of the laws.

§ 959.15 provides a special procedure after the conviction of a defendant for a sex crime. Upon conviction for a serious sex crime,[2] an offender must be committed by the court to the Department for a 60-day presentence examination at the sex deviate facility at the state prison in Waupun, § 959.15(1). Upon conviction for lesser sex crimes, the court may, in its discretion, commit the offender to the Department for a presentence examination, § 959.15(2).

If the Department recommends that specialized treatment is not required, the offender is sentenced as are other offenders against various criminal statutes, § 959.15(5). If the Department recommends specialized treatment, the court must afford the offender a hearing on the need for such treatment. If, at the conclusion of the hearing, the court determines that the offender is in need of specialized treatment, it either places him on probation to the Department, on the condition that he receive outpatient or inpatient treatment, or commits him to the Department for inpatient treatment at the sex deviate facility, § 959.15(6). The requirement of a hearing on the need for specialized treatment is a product of Huebner v. State, 33 Wis.2d 505, 147 N.W.2d 646 (1967), the application of which is not retroactive. Prior to *Huebner,* commitment was mandatory if the Department recommended it.

If the offender is committed to the Department, it has complete control over him and may retain him under its control and supervision "so long as in its judgment such control is necessary for the protection of the public", but it may not release any person convicted of a felony, without the written approval of the committing court, prior to two years after the date of commitment, § 959.15(11). In any case, the Department may not retain control of an offender longer than the maximum term provided by law for the offense for which he was convicted or one year, whichever is greater, § 959.15(12), except as provided in § 959.15(13), (15).

During the period of commitment, the Department must make periodic reexaminations of the offender at intervals not exceeding one year. A failure to provide such reexamination entitles the offender to petition the court for an order of discharge and the court shall discharge him unless the Department can show at a hearing that there is necessity for further control, § 959.15(9).

If the offender is still considered dangerous at the end of his maximum term, the Department may apply to the committing court for an order extending the commitment for five years, § 959.15(13), (15). When the Department applies for such an order the court holds a hearing at which the offender is entitled to counsel, process to compel examination of witnesses and production of evidence, and examination by a doctor of his own choosing. The defendant is expressly denied the right to trial by jury in these proceedings, however, § 959.15(14).

The procedure of review and recommitment may be repeated as many times as in the opinion of the Department it may be necessary for the protection of the public, § 959.15(15) (a).

During such periods of extended commitment, the offender may apply to the court for reexamination at six month intervals, § 959.15(15) (c).

Respondent contends that commitment under § 959.15(6) is a judgment in a criminal case, that is, a sentencing in a criminal case, and that petitioners are, therefore, precluded from challenging their incarceration until the maximum term for the offenses for which they were convicted have expired. For this propo-

---

2. These crimes are rape (§ 944.01), sexual intercourse without consent (§ 944.02), indecent behavior with a child (§ 944.11), and attempted rape or attempted sexual intercourse without consent (covered by § 939.32).

sition respondent cites State of Minnesota ex rel. Pearson v. Probate Court etc., 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744, 126 A.L.R. 530 (1940), which upheld commitment under the Minnesota "psychopathic personality" statute, and Williams v. People of State of New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), which held that the due process clause of the Fourteenth Amendment does not require a judge to hold a hearing, with an opportunity for a convicted defendant to participate, before determining the sentence to be imposed.

The Wisconsin Supreme Court has concluded, however, that the commitment procedure under the Sex Deviate Act is so different from sentencing as to amount to an independent proceeding. Huebner v. State, supra, 33 Wis.2d at 526, 147 N.W.2d 646. Moreover, the Colorado commitment procedure under a similar statute was found to be independent of the conviction in Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), and the same was determined to be true of the Pennsylvania procedure in United States ex rel. Gerchman v. Maroney, 355 F.2d 302 (3d Cir. 1966).

In Specht v. Patterson, supra, the Supreme Court refused to extend Williams v. New York, supra, to "this radically different situation", 386 U.S. at 608, 87 S.Ct. 1209, 18 L.Ed.2d 326, and distinguished Minnesota ex rel. Pearson v. Probate Court as not being triggered by a criminal conviction. In United States ex rel. Gerchman v. Maroney, supra, the court concluded:

> "The proceeding under the [Pennsylvania sex deviate statute] is thus neither a civil commitment nor a sentence within the meaning of *Williams*. It is a separate criminal proceeding which may be invoked after conviction of one of the specified crimes." 355 F.2d at 312.

Respondent seeks to avoid Huebner v. State, supra, by pointing out that its application was not retroactive and, therefore, that it does not apply to either of petitioners since each was committed before the decision in that case. That decision was limited in its retroactive effect to pending cases in which the report of the Department had not yet been acted upon.

The decision by the Wisconsin Supreme Court that *Huebner's* application was to be prospective was made with respect to the original commitment procedure. Petioners do not challenge this aspect of their incarceration. The prospectivity of the *Huebner* decision does not affect the characterization of the commitment procedure insofar as it applies to other matters. In refusing to make its decision retroactive, the Supreme Court of Wisconsin was obviously motivated by the difficulty in attempting to reprocess all of the cases in the Department through the original commitment proceedings, as respondent points out in its brief. The prospectivity of that decision in regard to the original commitment proceedings is not controlling with regard to the procedures for periodic reexamination which are challenged here.

Respondent persists in its contention that the commitment under § 959.15 is simply a sentencing in a criminal case, despite Specht v. Patterson, supra, and United States ex rel. Gerchman v. Maroney, supra, on the ground that the statutes in those cases subjected defendants to a commitment for life, although the crimes involved carried maximum sentences of 10 years and five years respectively, whereas the Wisconsin statute subjects petitioners to a commitment which cannot exceed the maximum for which they might have been sentenced.

But commitment under § 959.15 exposes the defendant to continuing incarceration beyond the maximum term for the offense for which he was convicted, § 959.15(13), (15). In addition, if the provisions of the statute with regard to "industrial good time" are to be construed as respondent contends, commitment under the Sex Deviate Act does subject the offender to a considerably longer term than if he were sentenced under the substantive criminal statute—

potentially as much as five years in the case of Hill and two and one half years in the case of Boye.

This attempt to persist in categorizing commitment under § 959.15 as a sentencing, despite Specht v. Patterson, supra, and United States ex rel. Gerchman v. Maroney, supra, also runs counter to Huebner v. State, supra.

■ I conclude that the commitment procedure under § 959.15 constitutes neither civil commitment nor a sentencing procedure, but an independent criminal proceeding, and that the petitioners are not precluded from challenging their incarceration by either Minnesota ex rel. Pearson v. Probate Court, supra, or Williams v. New York, supra.

I proceed to the merits of petitioners' contentions.

Petitioners assert that by their foreclosure from judicial reexamination of their mental condition until the expiration of the maximum term prescribed by law for the offense for which each was convicted they are deprived of equal protection of the law in comparison with persons committed under the Mental Health Act, ch. 51, Stats., including: prisoners who become mentally ill while serving a jail sentence, § 51.21; persons acquitted by reason of insanity, § 957.11; and persons unable to stand trial because of insanity, § 957.13. They point out that under § 51.11 such persons are afforded the right to periodic judicial reexamination with right to counsel, cross-examination of witnesses, introduction of evidence on their behalf, examination by two court-appointed physicians, and right to trial by a six-man jury. Judicial reexaminations may be compelled at one year intervals. In the case of those acquitted by reason of insanity and those insane at the time of trial, the standard for receiving judicial reexamination is somewhat more demanding. In each of these situations, if upon reexamination the court finds that the applicant is still insane or feeble-minded, another reexamination by the court may not be had unless the court is satisfied that there is

reasonable cause to believe that the applicant's mental condition has improved. §§ 957.11(4), 957.13(4).

Petitioners urge that because of the foreclosure from periodic judicial review and the express denial of the right to jury trial in the proceedings for extended control, § 959.15(14) (a), the Wisconsin Sex Deviate Law, is unconstitutional on its face. For this proposition, they cite Baxstrom v. Herold, 383 U.S. 107, 86 S. Ct. 760, 15 L.Ed.2d 620 (1966). In that case, petitioner was found to be insane while serving a prison sentence for assault. At the expiration of his sentence, the director of the mental institution in which he was confined filed a petition requesting that petitioner be civilly committed. In the commitment proceedings, petitioner was not afforded jury review which was available to all other persons civilly committed in New York. The director contended that the state had created a reasonable classification differentiating the civilly insane from the "criminally insane". The Supreme Court rejected this contention and held for petitioner, stating:

"Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made. [Citations omitted.] Classification of mentally ill persons as either insane or dangerously insane of course may be a reasonable distinction for purposes of determining the types of custodial or medical care to be given, but it has no relevance whatever in the context of the opportunity to show whether a person is mentally ill *at all*. For purposes of granting judicial review before a jury of the question whether a person is mentally ill and in need of institutionalization, there is no conceivable basis for distinguishing the commitment of a person who is nearing the end of a penal term from all other civil commitments." (Emphasis in the original.) 383 U.S. at 111–112, 86 S.Ct. at 763.

The Wisconsin Supreme Court in Huebner v. State, supra, although not resting its decision on a denial of equal protection, saw the problem raised by Baxstrom v. Herold, supra, with regard to the difference in the initial commitment proceedings under the Mental Health Act, commenting:

"While equal protection does not require all persons to be treated in the same manner, the distinction must have some relevance to the purpose of the classification. The conviction of a sex crime as a basis for the denial of a hearing on the issue of mental aberrations and the need for specialized treatment does not seem to be a relevant distinction for the purposes of treatment." 33 Wis.2d at 528, 147 N.W.2d at 657.

Respondent contends that there is a distinction between mental illness and the mental or physical aberrations referred to in § 959.15 which justifies a difference in treatment between those committed as mentaly ill and those committed because of mental or physical aberrations. This contention misses the significance of the principle in Baxstrom v. Herold, supra. § 959.15(6) provides that commitment of an offender to the Department is to turn on the determination whether he is in need of "specialized treatment for his mental or physical aberrations". Since commitment constitutes an independent proceeding, the rule in Baxstrom v. Herold, supra, requires that the offender be given an opportunity to show whether he, in fact, has such mental or physical aberrations. The nature of the mental or physical infirmity is of no significance. The critical question is whether the offender is afflicted by it.

Petitioners now seek to have this principle extended to the provisions for periodic reexamination of those committed under § 959.15 so as to entitle such persons to judicial reexamination. I have concluded that such an extension is not justified.

■ The Equal Protection Clause prohibits only invidious discrimination.

Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955); Morey v. Doud, 354 U.S. 457, 463, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957). A statutory distinction must, however, have some relevance to the purpose for which the classification is made. Baxstrom v. Herold, supra 383 U. S. at 111, 86 S.Ct. 760; Morey v. Doud, supra 354 U.S. at 465, 77 S.Ct. 1344, 1 L.Ed.2d 1485.

The commitment proceedings under the statute constitute neither a civil commitment nor a sentencing procedure, but rather an independent criminal proceeding which is triggered by a criminal conviction. The determinative question here is whether once the criminal conviction has activated the commitment proceeding, its relevance is entirely extinguished.

■ An examination of the statutory scheme discloses that the legislature did not intend that the criminal conviction was to become entirely irrelevant. The purposes of the statute are to protect society from dangerous sex crimes and to provide treatment for the dangerous sex offender. To accomplish those objectives, a completely indeterminate sentence is necessary. Note, Criminal Law —Wisconsin's Sex Deviate Act, 1954 Wis. L.Rev. 324. The Department is to retain control "so long as in its judgment such control is necessary for the protection of the public", but no person convicted of a felony may be discharged prior to two years after the date of his commitment without the written approval of the committing court, § 959.15(11). Provision is also made for the Department to parole those committed to it when it appears after recommendation by a review board that the prospective parolee is capable of making an acceptable adjustment in society, § 959.15(10).

The legislature has apparently concluded that the criminal conviction has some relevance to the determination of when an offender may be discharged without endangering the public. This conclusion is not unreasonable and it serves to distinguish the reexamination proceedings from the commitment proceedings and to

distinguish the right to judicial reexaminations under the Mental Health Act from the alleged right to judicial reexaminations under the Sex Deviate Act.

The determination in the commitment proceedings is not whether the offender should be incarcerated at all, but whether he should be imprisoned or committed to the Department for treatment. On this issue the conviction of a crime does not come into play. It merely triggers the inquiry.

■ The issue here is whether the offender can challenge his confinement once it has been determined after a hearing where he shall be confined. On this issue the legislature could have reasonably concluded, and evidently has concluded, that the conviction of a crime is a factor in determining whether an offender can be released without endangering the public.

■ For the purposes of judicial reexamination and discharge, persons committed under § 959.15 can reasonably be distinguished from those committed under the Mental Health Act, for whom a criminal conviction does not act as a trigger to their commitment. This distinction is more difficult to sustain with regard to persons committed after acquittal by reason of insanity since the verdict of not guilty by reason of insanity presupposes the conclusion that the defendant committed the acts charged. Rucker v. United States, 108 App.D.C. 75, 77, 280 F.2d 623, 625 (1960). The legislature might reasonably conclude, however, that conviction for a sex crime indicates a greater threat to public security than does the commission of non-sex crimes.

Petitioners also claim that § 959.15 differentiates unreasonably among those committed to the Department after conviction for a sex crime. They contend that their foreclosure from judicial reexamination until the expiration of the maximum term prescribed by law for the offense for which each was convicted deprives them of equal protection of the law in comparison with those convicted of different sex crimes and committed to

the Department under § 959.15. In fact, Hill claims that he is deprived of equal protection in comparison with Boye since Boye is entitled to judicial reexamination after 15 years while Hill must wait 30 years before he is entitled to judicial reexamination. Petitioners' argument is that commitment to the Department under § 959.15 turns on the need for specialized treatment and, therefore, the maximum periods of confinement are not reasonably related to the purpose of the statute.

■ A primary aim of commitment of sex offenders to the Department, however, is the protection of the public, as noted above. The legislature could reasonably conclude that the crime for which an offender is convicted has some bearing on the maximum duration of his confinement for the purpose of protection of the public. § 959.15, therefore, does not differentiate unreasonably among those committed to the Department after conviction for a sex crime.

■ I express no view with regard to petitioners' claim that § 959.15 is unconstitutional on its face because it expressly denies the right to jury trial in proceedings to extend commitment. That issue is not essential to this case and courts will not anticipate a question of constitutional law in advance of the necessity of deciding it. See concurring opinion of Brandeis, J., in Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 346, 56 S.Ct. 466, 80 L.Ed. 688 (1936).

Petitioner Boye contends that the failure of respondent to credit him with "industrial good time" denies him equal protection of the laws. Respondent replies that he was merely acting in accordance with statutory authority.

§ 959.15(12) provides that a "person committed to the Department * * * shall be discharged at the expiration of the maximum term prescribed by law for the offense for which he was convicted, *subject to the provisions of s. 53.11*, or at the expiration of one year, whichever is the greater." (Emphasis added.) §

53.11 provides credit to inmates for "good time" for compliance with prison rules and regulations.

Nothing is said in § 959.15(12) about § 53.12, the provision for credit for "industrial good time". Petitioner urges that it should be read into § 959.15 (12); respondent urges that the principle *expressio unius exclusio est alterius* requires the conclusion that the legislature intended to give persons committed under § 959.15 the benefit of "good time" but not "industrial good time" in determining the expiration of the original commitment. I agree with respondent's construction.

Petitioner argues that § 53.12(1) states "every inmate" is entitled to its benefits and that specific provisions should control similar general provisions. Furthermore, he urges that the statute should be strictly construed in his favor since penal statutes are to be strictly construed in favor of the accused.

These canons of construction are of insufficient weight in light of the tortured construction which petitioner urges on the court. Petitioner fails to offer an explanation as to why the legislature should have expressly included § 53.11 and yet omitted § 53.12 from § 959.15 (12). He has also failed to explain adequately why the court should not give weight to § 959.15(18) which provides that all statutes in conflict with this section are superseded and that provisions of this section shall prevail over conflicting provisions previously enacted.

§ 53.12 was enacted in 1947 and has not subsequently been amended. § 959.-15 was enacted in 1951. At the time of its enactment the provision "every inmate" in § 53.12 described the prevailing situation. This was modified by the enactment of § 959.15 and the legislature apparently chose to resolve any conflicts by means of § 959.15(18) rather than eliminate every conflicting provision in the statutes of Wisconsin.

Petitioner does not appear to contend that the statute itself, construed so as to deprive him of credit for "industrial good time", is subject to question on constitutional grounds, nor could he successfully do so. The legislature could reasonably conclude that in the case of a person with sexual aberrations the ability to successfully perform a job in prison is not inconsistent with continuing aberrations which might make him dangerous to the public. My construction is, therefore, unaffected by constitutional overtones. See concurring opinion of Brandeis, J., in Ashwander v. Tennessee Valley Authority, supra at 348, 56 S.Ct. 466, 80 L.Ed. 688.

Finally, it should be noted that the Supreme Court of Wisconsin apparently concurs with the construction adopted here. See Huebner v. State, supra 33 Wis.2d at 523, 147 N.W.2d 646.

Petitioner Boye also appears to contend that since sex offenders, committed to the Department pursuant to § 959.15, work or lose privileges just like other prisoners, contrary to the contemplation of the legislature, respondent's failure to credit them with "industrial good time" deprives them of equal protection of the law. For this proposition he cites Talley v. Stephens, 247 F.Supp. 683 (E.D.Ark.1965). The respondent might reasonably conclude, however, just as the legislature might conclude, as noted above, that the ability to successfully perform a job in prison is not inconsistent with continuing aberrations which would make a sex offender dangerous to the public. The differentiation which petitioner contends has been drawn by respondent, therefore, does not work a denial of equal protection of the law upon petitioner.

The petitions for writs of habeas corpus are hereby denied.