STATE, Respondent, v. TORPY, Appellant.

*No. State 172.   Argued June 7, 1971.—Decided June 25, 1971.*
(Also reported in 187 N. W. 2d 858.)

102

104

106

The cause was submitted for the appellant on the briefs of *Shimek & Lenchek* and *Jerome J. Shimek* and *Stan L. Lenchek,* all of Milwaukee, and for the respondent on the brief of *Robert W. Warren,* attorney general, *William A. Platz* and *Robert D. Martinson,* assistant attorneys general, and *E. Michael McCann,* district attorney of Milwaukee county.

BEILFUSS, J. The issues as we see them are:

1. Did the trial court err in finding the defendant had committed a sex crime upon hearsay testimony?

2. Was the recommendation of the H&SS Department for specialized treatment void because:

(a) The H&SS Department did not certify it had adequate facilities for examining the defendant?

(b) The examination given to the defendant did not include a physical examination.

3. Are the criteria upon which the H&SS Department bases its recommendations invalid and is the statute constitutionally void for vagueness?

4. Is the phrase "dangerous to the public" a sufficient standard for determining whether a commitment should be continued?

The only testimony, after the entry of the plea of guilty, upon which the court found the defendant was probably motivated by a desire for sexual excitement was given by a police officer of the West Milwaukee Police Department. He stated that he had talked personally with the boy and that the boy told him the defendant had kissed him on the lips and had opened his trousers and fondled his private parts. This testimony was hearsay and subject to objection. However, it was relevant and probative and sufficient to sustain the finding.

Hearsay evidence is admissible and may be considered by the trier of the fact unless timely objection is made and failure to make the objection constitutes a waiver.[5] The same attorney who represented the defendant at the plea of guilty represented him at the preliminary examination and cross-examined the boy at that time. If there was any question as to the accuracy of the officer's testimony an objection should have been made and the boy could have been called. After all of these proceedings, and at this late date, it is much too late to voice an objection. It has been waived. The testimony was relevant, probative, crucial and convincing and clearly supports the finding.

The defendant contends when the records clerk refused to accept the defendant at the sex deviate facility (Central State Hospital at Waupun) because the H&SS Department had not certified it had "adequate facilities for making such examination and that it was [is] willing to accept such commitment" that there was no authority to examine him elsewhere and that ended the matter.

The underlying purpose of the Sex Deviate Act is to protect the public from the dangerous criminal and sexually deviated acts of afflicted persons. A secondary purpose is to treat the person so afflicted. We take notice that temporarily, at least, the state does not have sufficient facilities, both physical and personnelwise, to examine all persons convicted of a crime which was probably sexually motivated to determine whether such person is sexually deviated.

The legislature has (in sec. 959.15 (1), Stats.) provided that if a person is convicted of certain "crime[s] against sexual morality"[6] such as forcible rape, sexual intercourse without consent, and indecent behavior with a child, the court "shall" commit the defendant to the

[5] *State v. Dunn* (1960), 10 Wis. 2d 447; 459, 103 N. W. 2d 36; *Nadolinski v. State* (1970), 46 Wis. 2d 259, 174 N. W. 2d 483.
[6] Ch. 944, Stats.

H&SS Department for a presentence social, physical and mental examination.

The legislature, further, in recognition of the limited facilities has directed that the court "may" commit an individual convicted of a crime that is probably motivated by sexual desire if the department certifies it has adequate facilities for making such examination and is willing to accept such commitment.

We do not believe that the objectives of the Sex Deviate Act should be thwarted by the unfortunate event of a temporary shortage of examination facilities. Accordingly, we recognize the right and approve the practice presently used by the department in some instances, namely delegating to a recognized public probation department as its agent the right to conduct the examination subject to department review and final determination. That is the procedure that was followed here. The Milwaukee County Adult Probation Department made the social history examination and the clinical psychologist and the psychiatrist appointed by the court made the examinations in their specialized fields. Reports of these examinations were sent to the H&SS Department and it made the determination that, "The Department recommends specialized treatment for Mr. Torpy under the provisions of Section 959.15 (6), Wisconsin Statutes." In our opinion that procedure is substantial and adequate compliance with the statute.

The defendant also contends the commitment procedure was void because a physical examination was not conducted and there was no determination as to whether the defendant had any physical aberrations. The statute provides for "a presentence social, physical and mental examination." The lack of physical examination was an erroneous failure to follow the statutory procedure. In this case, after a review of the entire record, and upon that record, we determine the error was harmless.

There is nothing in the record to even remotely suggest that Torpy has any physical aberration or abnormality that did or could in any way affect his conduct as to sexual motivation. Before his commitment he was examined by two psychiatrists who, of course, are also medical doctors. One was Dr. Hauser, appointed by the court to conduct an examination on behalf of the state; and the other, Dr. Schmidt, selected by the defendant and appointed by the court at his request. Neither of these experts reported or testified to any physical aberration although both were competent to do so if, in their judgment, they believed any such defect existed. The defendant himself had an opportunity to speak at the *Huebner* hearing if he was aware of such condition.

From the record it is apparent that in the presentence examination, the mental examination and a determination of whether there is a psychopathological condition that affects a deviate sexual motivation is the major concern. Here, that condition was found to exist and that alone is sufficient to warrant commitment.

Further, any defects or material deficiencies could be thoroughly explored and exposed by the defendant at the *Huebner* due process type hearing before commitment. We hold the sec. 959.15 (6) commitment was not void for failure to comply with any of the statutory provisions.

The defendant contends that the criteria upon which the H&SS Department bases its recommendation for commitment is not set forth in the statute and that the procedure is therefore constitutionally void for vagueness. We do not agree for several reasons.

Sec. 959.15, Stats., and its several subsections taken together constitute the Wisconsin Sex Crimes Act. None of its subsections are called into play until after the defendant has been convicted of a designated sex crime

or a crime that was motivated by sexual desire. As stated above, the underlying objectives of the Sex Crimes Act are first, to protect the public against the danger of a sexual deviate, and second, to rehabilitate him. Criminal statutes rarely advise one who would violate the law exactly as to what the consequences of his violation will be should he be found guilty, nor does due process require such exactness.[7]

An average person reading sec. 959.15, Stats., in its entirety, and not just one or more selected subsections, will be left with the understanding that if an individual is found guilty of a designated sex crime or a crime where he was motivated by sexual desire, he can be subjected to examinations concerning his social history and his physical and mental condition to determine whether he has physical or mental aberrations and whether the department recommends specialized treatment. If such treatment is recommended the court may place him on probation with a condition for out-patient or inpatient treatment, or may order him committed to the sex deviate facility designated by the state. The statute also informs him he is entitled to periodic re-examinations and that in extreme cases he could be confined for life at such a facility, but only after periodic examinations and court hearings of intervals of no less than five years and then only upon a determination that he would be dangerous to the public if released because of his mental or physical deficiency, disorder or abnormality.

In addition to the statutory directives, before a person can be committed as a sex deviate he is entitled to a due process judicial hearing. This hearing, now commonly referred to as a *Huebner* hearing, is provided for in *Huebner v. State, supra,* at pages 528, 529, as follows:

---

[7] *State v. Coubal* (1946), 248 Wis. 247, 264, 21 N. W. 2d 381.

"We think the language in *State ex rel. Volden v. Haas, supra,* that due process does not require a hearing on the administrative report and recommendation for specialized treatment can no longer be approved and is hereby withdrawn. We hold that when a person is convicted of a sex crime and subject to a presentence social, physical and mental examination and the report of the department recommends specialized treatment, that before a court can place such person on probation in the department with treatment or commit him to the department for treatment under sec. 959.15 (6), Stats., he shall be afforded a hearing on the issue of the need for specialized treatment for his mental or physical aberrations unless such hearing is expressly waived by him. The defendant shall be afforded such hearing with counsel, process to compel attendance of witnesses, production of evidence, an examination by a doctor or psychiatrist of his own choosing, and if he is unable to provide counsel, he shall have counsel appointed for him at public expense, all as provided in sec. 959.15 (14), for hearings after commitment to the department. After such hearing the court shall make its finding and either sentence the defendant under criminal law as provided in sec. 959.15 (5) or commit him to the department under the alternatives of sec. 959.15 (6). In short, the department's recommendation is not mandatory on the court, which shall hold a hearing thereon and make its determination upon the evidence."

At this hearing the state, not the defendant, has the burden of proof; he may challenge and offer evidence to disprove any part of the history, examination findings, opinions, conclusions and standards by which the state or the H&SS Department believes that he is suffering from sexually related physical or mental aberrations that require specialized treatment or treatment and confinement. He is entitled to make these challenges with witnesses, expert witnesses of his own choice, and counsel, all at public expense if necessary. It is only after this hearing (unless waived) that the court can order a commitment.

Further, in addition to the statutory provisions and the *Huebner* hearing, the H&SS Department has established three criteria it uses in deciding whether it will recommend specialized treatment under the Sex Crimes Act. They are:

(1) Was the behavior of which the defendant was convicted the result of sexual psychopathology;

(2) Is the defendant dangerous to society; and

(3) Is he treatable, or will he not respond to treatment.

The defendant contends that the fact that these criteria are not published in the statutes denies him an opportunity to know in advance the basis upon which he will or will not be incarcerated. There are two reasons why this court rejects this argument. First, the argument was never at any time raised below and the trial court has had no opportunity to rule on whether the defendant is denied due process. Secondly, the record in this case makes it very clear that the defendant's attorney knew full well what the H&SS Department criteria were because he himself listed the criteria in a question to one of the expert witnesses.

The defendant further contends that the standards are too vague. We disagree. None of the experts in the case, defense or prosecution, seemed to have any difficulty in understanding what these criteria meant. The only disagreement revolved around whether or not they were applicable to the defendant. To require greater specificity would destroy the flexibility the legislature gave to the H&SS Department in carrying out its duty with regard to administration of the Sex Crimes Act. A successful challenge to the vagueness of these criteria would ultimately result in a situation where the H&SS Department would be forced to publish and circulate paragraph upon paragraph of complex psychiatric definitions. This would obfuscate rather than clarify the meaning of the H&SS Department criteria. These criteria were established subsequent to and in response

to this court's decision in *Huebner*. Since that time trial courts throughout the state have been applying them without apparent difficulty. The following quote is taken from a footnote at page 980 of a Wisconsin Law Review [8] article cited below:

" 'In statutes the use of technical psychiatric terms should be avoided whenever possible. Psychiatric knowledge and terminology are in a state of flux. Once having become a part of the public law such a term attains a fixity unresponsive to newer scientific knowledge and application.' Committee on Forensic Psychiatry of the Group For the Advancement of Psychiatry, Psychiatrically Deviated Sex Offenders, Report No. 9, at 1 (1950)."

The final issue deals with the continuance of control by the H&SS Department. It is defendant's contention that the statutory description of "dangerous" is not a sufficient standard for determining whether a commitment or control should be continued.

The pertinent statutory sections are:

"959.15 **Sex crimes.** . . .

"(13) CONTINUANCE OF CONTROL; ORDER AND APPLICATION FOR REVIEW BY THE COMMITTING COURT. If the department is of the opinion that discharge of a person from its control at the time provided in sub. (12) would be *dangerous to the public for reasons set forth in sub. (14)*, it shall make an order directing that he remain subject to its control beyond that period; and shall make application to the committing court for a review of that order at least 90 days before the time of discharge stated.

"(14) ACTION OF COMMITTING COURT UPON APPLICATION FOR REVIEW; REASONS FOR CONTINUANCE OF CONTROL BY THE DEPARTMENT. (a) If the department applies to the committing court for the review of an order as provided in sub. (13), the court shall notify the person whose liberty is involved, and, if he be not sui juris, his parent or guardian as practicable, of the application, and shall afford him opportunity to appear in court

---

[8] *See generally*: *Criteria for Commitment Under the Wisconsin Sex Crimes Act*, 1967 Wis. L. Rev. 980.

with counsel and of process to compel the attendance of witnesses and the production of evidence. He may have a doctor or psychiatrist of his own choosing examine him in the institution to which he is confined or at some suitable place designated by the department. If he is unable to provide his own counsel, the court shall appoint counsel to represent him. He shall not be entitled to a trial by jury.

"(b) If, after a hearing, the court finds that discharge from the control of the department of the person to whom the order applies would be *dangerous to the public because of the person's mental or physical deficiency, disorder or abnormality* the court shall *confirm the order*. If the court finds that discharge from the control of the department would not be dangerous to the public for the causes stated, the court shall order that he be discharged from the control of the department at the time stated in the original commitment." (Emphasis supplied.)

We first observe that the statutory standard is not just "dangerous" but "dangerous to the public because of the person's mental or physical deficiency, disorder or abnormality."

The experts of the H&SS Department reported to the court that they were applying to the court for an order continuing the department's custody over the defendant as provided for in sub. 14 (a) and (b), Stats., based on their opinions that a discharge of the defendant would be dangerous to the public. On cross-examination Dr. Anderson, one of the state's experts, conceded that it was highly improbable that this defendant would engage in violence in order to gratify his sexual desires. The defendant was not dangerous in that sense. However, Dr. Anderson felt that there was another aspect to the "dangerous" criteria beyond the question of whether the defendant would or would not resort to violence. Dr. Anderson explained that if the defendant was released it was very likely that he would seek out minors and impose himself upon them in hopes of establishing a homosexual relationship. Dr. Anderson said that such

an encounter often has a very harmful effect on the sexual development of a young male. Thus, he felt that the defendant was a danger to society in this sense even though it was quite unlikely that he would use violence to attain his ends.

Testimony for the defendant was given by Dr. Edward C. Schmidt, who was of the opinion that the defendant was not a sexual psychopath but merely an alcoholic. Dr. Schmidt felt that if the defendant's drinking problem could be cured, his sexual problems would disappear. Dr. Schmidt stated that he did not believe the defendant would profit from incarceration. He felt that the wisest course of action would be to put the defendant on an outpatient basis and require him to seek treatment for his drinking problem.

". . . An offender whose deviant sexual conduct is directed toward others to their physical or moral harm should be regarded as dangerous. If his crime involved violence or aggression, or if there was an age disparity between the offender and his adolescent victim, the offender should be considered dangerous. . . ." 1967 Wis. L. Rev. 980 at 984, 985.

After hearing all of the testimony the court concluded that the state had satisfied its burden of proving that the defendant's release would be dangerous to the public. The order granting continued custody over the defendant was granted. The defendant argues that the court erred and that the preponderance of the evidence does not show that the defendant's release would be dangerous. When the trial court has resolved conflicting expert opinions its decision will be reviewed only for an abuse of discretion. In view of Dr. Anderson's testimony that the defendant would most probably seek out immature males and might, if provoked, use violence, is sufficient to support the finding and orders of the court for continued department control.

*By the Court.*—Judgment and orders affirmed.