STATE EX REL. Barbara Lynn TERRY, Petitioner-
Appellant,

v.

Donald E. PERCY, secretary, Department of Health
& Social Services, Respondent.

Supreme Court

*No. 75–503. Argued February 7, 1980.—Decided April 8, 1980.*

(Also reported in 290 N.W.2d 713.)

For the appellant there was a brief and oral argument by *Charles Bennett Vetzner*, assistant state public defender.

For the respondent the cause was argued by *Robert D. Repasky*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

A brief amicus curiae was filed by *William H. Lynch* of Milwaukee, for The Wisconsin Civil Liberties Union Foundation, Inc.

CONNOR T. HANSEN, J. In *State ex rel. Terry v. Schubert*, 74 Wis.2d 487, 247 N.W.2d 109 (1976) (*Terry I*), this court reviewed an order and judgment of the circuit court for Dodge county which dismissed petitioner Terry's writ of habeas corpus by which he sought a discharge from a commitment under ch. 975, Stats., the Wisconsin Sex Crimes Act. We held that the following minimal due process rights are applicable to the periodic examination procedure provided by sec. 975.09:

". . . (1) written notice of the hearing; (2) disclosure of the evidentiary material which will be considered by the hearing body; (3) opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine witnesses, in the absence of good cause for not allowing confrontation; (5) a neutral and detached hearing body; and (6) a written statement by the factfinders as to the evidence relied on and reasons for refusing discharge. *See Morrissey v. Brewer, supra* [408 U.S. 471] at 489." *Terry I, supra*, at 502a–502b.

The judgment of this court, dated November 30, 1976, reads as follows:

"Affirmed in part; reversed in part; remanded for entry of order consistent with the declaration of rights as per decision herein and ordering respondent to provide petitioner within a reasonable time a hearing under sec. 975.09, Stats., which meets the procedural requirements contained herein."

The Secretary of the Department of Health & Social Services thereafter petitioned the United States Supreme Court for a writ of certiorari to review this court's judgment. By order dated November 3, 1977, the Supreme Court granted the petition for a writ of certiorari, and ordered that the judgment of the Supreme Court of Wisconsin be vacated and that the "case [be] remanded to consider whether judgment is based upon federal or state constitutional grounds, or both. See *California v. Krivda,* 409 U.S. 33 (1972)." *Percy v. Terry,* 434 U.S. 808 (1977).

Upon receiving the remand order from the United States Supreme Court, this court issued an order vacating its judgment entered on November 30, 1976, directing the circuit court for Dodge county to return the record on appeal, and establishing a briefing schedule. On June 30, 1978, in *State ex rel. Terry v. Percy,* 84 Wis.2d 693, 267 N.W.2d 380 (1978) (*Terry II*), this court reinstated its original decision and held that the decision was based upon federal constitutional grounds. We stated:

"Pursuant to the mandate of the United States Supreme Court hereinabove quoted, we have reexamined our opinion in the subject case, have read the briefs filed by the parties and amicus curiae, and have reviewed the record. In reaching our initial decision we acted solely by compulsion of the fourteenth amendment of the federal constitution. Inasmuch as we deem it unnecessary to alter or amend our prior decision, we reiterate and reinstate that decision in its entirety as filed and modified." *Terry II, supra,* at 697.

The Secretary of the Department of Health & Social Services again petitioned the United States Supreme Court for a writ of certiorari to review this court's decision. By order dated July 24, 1979, the Supreme Court granted the petition, and ordered that the judgment of this court be vacated and the "case [be] remanded to the Supreme Court of Wisconsin for further consideration in light of *Parham v. J.L. and J.R.,* 442 U.S. 584

(1979) and *Greenholtz v. Inmates of Nebraska Penal Complex*, 442 U.S. 1 (1979)." *Percy v. Terry*, 443 U.S. 902, 99 S. Ct. 3093, 61 L. Ed.2d 870 (1979).

Upon receipt of this second remand order of the United States Supreme Court, we issued an order setting the reconsideration of this case for oral argument and establishing a briefing schedule.

The facts out of which this case arises are set forth in detail in *Terry I, supra*. Terry was convicted of two counts of rape and one count of theft. Pursuant to the recommendation of the Department of Health & Social Services that Terry was in need of specialized treatment as a sex deviate, the trial court ordered him committed to the department under sec. 975.06, Stats. Terry was also sentenced to an indeterminate term of not more than five years on the theft conviction, to be served concurrently with the commitment.

After serving approximately three years at the Wisconsin State Prison, Terry was transferred to Central State Hospital, pursuant to sec. 975.08(2), Stats. Subsequent to the mandatory release date for the sentence on his theft conviction, Terry commenced a habeas corpus proceeding, alleging that he was not suffering from any mental aberrations due to sexual psychopathy and that continuation of his confinement was a violation of his rights.

The issue on this appeal is what process is constitutionally due a person committed under ch. 975, Stats.,[1] in a reexamination of that commitment between the time of initial commitment and the expiration of the maxi-

[1] Numerous sections of ch. 975, Stats., were repealed, recreated and amended by ch. 117, Laws of 1979. In particular, sec. 975.01 was repealed and recreated so that it now provides that no person may be committed under ch. 975 after the effective date of the new law, which is July 1, 1980, or the day after publication, whichever is later.

mum term prescribed by law for the crime of which he was convicted.

Sec. 975.11, Stats., provides that the department shall discharge any person committed to it under the Sex Crimes Act "as soon as in its opinion there is reasonable probability that he can be given full liberty without danger to the public . . . ." Such a determination may be made through periodic departmental examinations as provided in sec. 975.09:

"975.09 **Periodic examination.** The department shall make periodic examinations of all persons within its control under s. 975.06 for the purpose of determining whether existing orders and dispositions in individual cases should be modified or continued in force. These examinations may be made as frequently as the department considers desirable and shall be made with respect to every person at intervals not exceeding one year. The department shall keep written records of all examinations and of conclusions predicated thereon, and of all orders concerning the disposition or treatment of every person under its control. Failure of the department to examine a person committed to it or to make periodic examination shall not entitle him to a discharge from the control of the department, but shall entitle him to petition the committing court for an order of discharge, and the court shall discharge him unless it appears in accordance with s. 975.13 that there is necessity for further control."

In *Terry I, supra,* at 496, this court noted that the department "has shown no formalized procedures which are followed in the periodic examination provided by sec. 975.09." Subsequent to the second remand order of the United States Supreme Court, the department adopted, by administrative order dated July 1, 1979, a detailed procedure to be followed in the periodic examination required by sec. 975.09.[2]

---

[2] The order identifies the decision maker as either the Forensic Service Director or the Sex Offender Director of the institution to which the sex offender is confined. In essence the procedure pro-

We must decide whether the procedural requirements for a reexamination of a sex crimes commitment set forth in *Terry I* should be modified in light of *Parham v. J.L. and J.R.*, 442 U.S. 584, 99 S. Ct. 2493, 61 L. Ed.2d 101 (1979), and *Greenholtz v. Inmates of Nebraska Penal Complex*, 442 U.S. 1 (1979).

In *Terry I, supra,* at 497, this court concluded that a person committed under ch. 975, Stats., has a valuable "interest in release from commitment, once the basis for that commitment no longer exists, . . . the determination for which calls for some orderly procedure." That conclusion was correct. The United States Supreme Court has held that a state statute may create a conditional liberty interest which is entitled to constitutional protection. *Greenholtz, supra,* at 11, 99 S. Ct. at 2106, 60 L. Ed.2d at 678, 679. We believe that such an interest is provided in the mandate of sec. 975.11 that a person committed under ch. 975 "shall" be discharged "as soon as in its [the department's] opinion there is reasonable probability that he can be given full liberty without danger to the public."

In making a determination, in *Terry I,* as to what procedural protections are due a person committed under ch. 975, Stats., we relied on *Morrissey v. Brewer,* 408 U.S. 471 (1972). In light of *Greenholtz* we now conclude that the process due is less stringent than the procedures we adopted in *Terry I.*

As in *Greenholtz,* the discharge from commitment with which we are concerned involves a denial to the committee of a conditional liberty which he desires, not a deprivation of liberty which he already has. Also, the de-

vides for: (1) prior notice of the examination; (2) opportunity to be present and make oral or written statements; (3) opportunity to question the staff personnel making the decision; (4) a written decision and recommendation to be given to the sex offender stating the reasons for the decision; and (5) review by the department of the decision at the request of the sex offender.

cision to discharge a person from commitment is a discretionary decision which depends on numerous elements, some of which are factual, but many of which are subjective appraisals by the department. The decision to discharge may be made for several reasons and may involve nothing more than an informed prediction as to what would best serve to protect the public or promote the welfare of the sex offender. Thus, in accordance with *Greenholtz,* it is not necessary that there be a formal adversary hearing in order to determine whether the commitment should be continued.

We believe that minimum due process requirements for a reexamination of a sex crimes commitment between the time of initial commitment and the expiration of the maximum time include:

(1) prior written notice of the examination.

(2) disclosure of the factors which will be considered by the decision maker.

(3) opportunity to be present and make oral or written statements and present documentary evidence.

(4) decision maker to be a person not involved in the direct care, treatment, or supervision of the sex offender.

(5) a record of the proceedings must be maintained, as provided in sec. 975.09, Stats.

(6) a written decision to be given to the sex offender stating the reasons for the decision.

(7) review by the department of a decision at the request of the sex offender.

These minimal due process rights are applicable to the periodic examination procedure provided under sec. 975.09, Stats., and the decision of the department upon such examination is reviewable by the committing court upon writ of certiorari.

In *State ex rel. Terry v. Percy*, 84 Wis.2d 693, 697, 267 N.W.2d 380 (1978), we decided that "[i]nasmuch as we deem it unnecessary to alter or amend our prior decision, we reiterate and reinstate that decision in its entirety as filed and modified." We now modify our decision in *State ex rel. Terry v. Percy, supra,* as herein set forth and, as modified, reinstate that decision. The cause is remanded for proceedings consistent with this opinion.

SHIRLEY S. ABRAHAMSON, J. (*dissenting*). I agree with the majority that ch. 975 creates a liberty interest entitled to constitutional protection. *Vitek v. Jones,* — U.S. —, 100 S. Ct. 1254, 1261, 63 L. Ed.2d 552 (1980). When the court set forth procedural safeguards in *Terry I* the court believed these procedures were mandated by basic elements of fairness and equity. As Justice Hanley wrote: "Due process basically requires that the state afford the opportunity to be heard at a meaningful time and in a meaningful manner." *Terry I,* 74 Wis.2d at 495. This court should not now abandon its convictions. This court should continue to require those procedures on the basis of the state statutes and state constitution. *See Terry II,* 84 Wis.2d 693, 698, 267 N.W. 2d 38 (1978) (Abrahamson, J. concurring).[1]

---

[1] In *State ex rel. Taylor v. Schoen,* 273 N.W.2d 612 (Minn. 1978), the Supreme Court of Minnesota required its state's parole board to follow procedures similar to those required by the United States Court of Appeals for the Eighth Circuit in *Inmates of the Nebraska Penal and Correctional Complex v. Greenholtz,* 576 F.2d 1274 (8th Cir. 1978), before the *Greenholtz* case was reversed by the United States Supreme Court, 442 U.S. 1 (1979). In a later case concerning the availability of habeas corpus, *Kelsey v. State,* 283 N.W.2d 892 (Minn. 1979), three justices concurred specially to state that the procedures required in *Taylor* "should be reaffirmed on the basis of our state constitution," because "the procedures set out in that case are grounded on and, indeed, mandated by basic elements of fairness and equity." 283 N.W.2d at 896.

The majority, relying on *Greenholtz*, adopts a new set of procedural requirements which it now thinks will afford the inmate the opportunity to be heard in a meaningful manner. The procedure set forth by the court raises more questions than it answers, will stimulate further litigation, and violates due process.

Relying on *Greenholtz*, the majority abandons the previously adopted requirement that the inmate be advised of the evidentiary material to be considered by the decision maker. Instead the inmate now has to be advised of the *factors* which will be considered by the decision maker. This change is unwise and unwarranted.

The majority has borrowed the "factor" language from *Greenholtz*, but in *Greenholtz* the Nebraska legislature had set forth 14 explicit factors which the decision maker is required to consider as well as one catchall factor, *i.e.*, "whatever factors [it] determines to be relevant." These legislatively mandated factors were important to the decision of the case because the factors revealed the nature of the decision making process of the Nebraska parole board and the factors were specific enough to provide notice to the inmate for purposes of preparation for the hearing. The factors are set forth as an appendix to the United States Supreme Court opinion. 442 U.S. at 16. In *Greenholtz* the United States Supreme Court stated that there was no claim that advising the inmate of these factors prejudices the inmate's ability to prepare adequately for the hearing.

In this case no factors upon which the decision to discharge is to be based are set forth in the Wisconsin statutes, or in the current administrative order or in the majority's opinion. The majority opinion merely states that the decision to discharge under sec. 975.11 "is a discretionary decision which depends on numerous elements, some of which are factual, but many of which are subjective appraisals by the department. The decision to dis-

charge may be made for several reasons and may involve nothing more than an informed prediction as to what would best serve to protect the public or promote the welfare of the sex offender." We can expect litigation on whether the factors set forth by the decision maker in compliance with the majority opinion are relevant to the decision to discharge and are sufficiently specific to enable the inmate to prepare adequately for the hearing.

The majority omits any requirement that the inmate be allowed to view or know of the evidence relied upon by the decision maker, and the inmate is given no opportunity to examine the file or pertinent parts thereof. The majority holds in effect that a decision made largely on the basis of the inmate's files adequately satisfies due process. However, the United States Supreme Court in *Greenholtz* and in prior cases[2] has indicated that due process may require that some measure be provided to minimize the risk that relevant adverse factual information in the file is inaccurate. In *Greenholtz* the Nebraska statutes provided that the decision maker had the discretion to make available to the inmate information in his file. The United States Supreme Court commented that the inmates did not challenge this procedure and "apparently are satisfied with the way this provision is administered since there is no issue before us regarding access to their files." *Greenholtz,* 442 U.S. at 15, n. 7. Yet in this case, unlike in the *Greenholtz* case, this court has furnished no protection to the inmate to ensure that the file upon which the decision maker relies is accurate.

The majority also abandons the requirement previously stated in *Terry I* that the decision set forth the evidence relied on by the decision maker. In *Greenholtz* the

[2] *Cf. Greene v. McElroy,* 360 U.S. 474, 496 (1959); *Gagnon v. Scarpelli,* 411 U.S. 778, 785 (1973).

United States Supreme Court held that the parole authority need not provide a summary of the evidence in its decision. However, as noted previously, in *Greenholtz* apparently the inmates did have some access to their files so that they could review the evidence. Both before and after the decision, the majority opinion denies the inmate knowledge of the evidence upon which the decision is being based; I believe such denial violates basic concepts of fair play.

At a minimum, I would require the decison maker to set forth the evidence in the decision. I find the following reasoning in the dissenting opinion of Justices Marshall, Brennen and Stevens in *Greenholtz* persuasive:

"While requiring a summation of the essential evidence might entail some administrative inconvenience, in neither *Morrissey v. Brewer, supra,* at 489; *Gagnon v. Scarpelli, supra,* at 786; nor *Wolff v. McDonnell, supra,* at 563, 564–565, did the Court find that this factor justified denying a written statement of the essential evidence and the reasons underlying a decision. It simply is not unduly

" 'burdensome to give reasons when reasons exist. Whenever an application . . . is denied . . . there should be some reason for the decision. It can scarcely be argued that government would be crippled by a requirement that the reason be communicated to the person most directly affected by the government's action.' *Board of Regents v. Roth,* 408 U.S. 564, 591 (1972) (MARSHALL, J., dissenting).

"See *Mathews v. Eldridge,* 424 U.S., at 345–346; *SEC v. Chenery Corp.,* 318 U.S. 80 (1943). And an inability to provide any reasons suggests that the decision is, in fact, arbitrary.[22]

"Moreover, considerations identified in *Morrissey* and *Mathews* militate in favor of requiring a statement of the essential evidence. Such a requirement would direct the Board's focus to the relevant statutory criteria and promote more careful consideration of the evidence. It would also enable inmates to detect and correct inaccu-

racies that could have a decisive impact.[23] And the obligation to justify a decision publicly would provide the assurance, critical to the appearance of fairness, that the Board's decision is not capricious. Finally, imposition of this obligation would afford inmates instruction on the measures needed to improve their prison behavior and prospects for parole, a consequence surely consistent with rehabilitative goals.[24] Balancing these considerations against the Board's minimal interest in avoiding this procedure, I am convinced that the Fourteenth Amendment requires the Parole Board to provide inmates a statement of the essential evidence as well as a meaningful explanation of the reasons for denying parole release.

"[22] See Hirschkop & Millemann, The Unconstitutionality of Prison Life, 55 Va. L. Rev. 795, 811–812, 839 (1969).

"[23] The preprinted list of reasons for denying parole is unlikely to disclose these types of factual errors. Out of 375 inmates denied parole during a 6-month period, the only reason given 285 of them was: 'Your continued correctional treatment, vocational, educational, or job assignment in the facility will substantially enhance your capacity to lead a law-abiding life when released at a later date.' App. 40–42. Although the denial forms also include a list of six '[r]ecommendations for correcting deficiencies,' such as '[e]xhibit some responsibility and maturity,' the evidence at trial showed that all six items were checked on 370 of the 375 forms, regardless of the facts of the particular case. App. 42; Tr. 38–39, 45–46.

"[24] See, *e.g.,* cases cited in n. 20, *supra; Candarini v. Attorney General of United States,* 369 F. Supp. 1132, 1137 (EDNY 1974); *Monks v. New Jersey State Parole Board,* 58 N.J. 238, 249, 277 A.2d 193, 199 (1971); K. Davis, Discretionary Justice: A Preliminary Inquiry 126–133 (1969); M. Frankel, Criminal Sentences 40–41 (1972); Dawson, The Decision to Grant or Deny Parole: A Study of Parole Criteria in Law and Practice, 1966 Wash. U.L.Q. 243, 302; Comment, 6 St. Mary's L.J. 478, 487 (1974)." 422 U.S. at 39–41.

The majority abandons the requirement previously stated in *Terry I* that the inmate have the opportunity

to present witnesses and have the right to confront and cross-examine witnesses in the absence of good cause for not allowing confrontation. In *Greenholtz* the Nebraska board allows an inmate to call witnesses and to be represented by private counsel of his choice; it does not allow the inmate to hear or cross-examine adverse witnesses. 442 U.S. at 5. Although the Eighth Circuit Court of Appeals held that "in the absence of exceptional circumstances the prisoner does not have a constitutional right to call witnesses in his behalf . . ." (576 F.2d 1274, 1284 (8th Cir. 1978)), the United States Supreme Court expressly declined to express an opinion as to whether due process required a right to present favorable witnesses or to cross-examine adverse witnesses. 442 U.S. at 16 n. 8. The majority grants the inmate fewer protections than Nebraska does and thus invites further litigation.

The majority also deletes the requirement of "a neutral and detached hearing body" and substitutes "decision maker to be a person not involved in the direct care, treatment or supervision of the sex offender." The majority's reason for changing the language is not stated. Perhaps the majority is relying on the *Parham* case which upheld the Georgia statute which enabled a physician to commit a child. However, in *Parham* the United States Supreme Court said that the "decision to have a child institutionalized for mental health care is sufficiently great that some kind of inquiry should be made by a 'neutral factfinder.' " 442 U.S. at 606. And in *Parham* the United States Supreme Court stated that it had "no reason to consider . . . what procedures for review are independently necessary to justify continuing a child's confinement." 442 U.S. at 607 n. 15. Although the decision maker need not come from outside the prison or hospital administration, the decision maker must be independent. *Vitek v. Jones,* — U.S. —, 100 S. Ct.

1254, 63 L. Ed.2d 552, 48 L.W. 4317, 4321 (March 25, 1980). Our court's original statement that the decision must be made by a "neutral and detached hearing body" is sound and should be retained. The hearing body can be one or more persons. A neutral and detached decision maker is a minimal requirement of due process. I cannot believe the majority intends to abandon this requirement.

Without carefully comparing the nature of the proceeding before us and those involved in *Greenholtz* or *Parham*[3] and without carefully considering all of the procedures provided by the Nebraska and Georgia statutes and administrative rules and practices, the majority unwisely abandons its carefully considered position in *Terry I*.

For the reasons I have set forth I conclude that the procedure set forth by the majority fails to meet minimal due process, fair play requirements. I therefore dissent.

---

[3] This case concerning continuing supervision over adult sex offenders does not necessarily contain similar policy considerations as *Parham* which concerned commitment of juveniles by a parent or state guardian for mental health care or as *Greenholtz* which concerned parole. In Wisconsin, another statute (sec. 975.10, Stats.) deals with parole of the sex crimes offender. In *Greenholtz*, the parole release decision was compared to the initial sentencing procedure. If the discharge of the sex offender is to be compared to the initial commitment as a sex offender, the initial procedure in Wisconsin is a full-fledged adversary proceeding with a right to a jury trial. Sec. 975.06, Stats.