STATE of Wisconsin, Plaintiff-Appellant,

v.

Ernest M. HANSON, Defendant-Respondent.†

Court of Appeals

*No. 79–568–CR. Submitted on briefs March 26, 1980.—*
*Decided June 24, 1980.*
(Also reported in 295 N.W.2d 209.)

† Petition for review granted.

For the appellant there was a brief by *Bronson C. La Follette,* attorney general, and *Pamela Magee-Heilprin,* assistant attorney general.

For the respondent there was a brief by *Timothy R. Young* of *Dempsey, Magnusen, Williamson & Lampe,* Oshkosh.

Before Voss, P.J., Brown and Bode, JJ.

BROWN, J.   This is an appeal by the state of an order discharging Ernest M. Hanson from commitment under ch. 975, Stats. (1977), the Wisconsin Sex Crimes Law.[1]   This law provides that periodic examinations must take place at least yearly following the commitment. Sec. 975.09, Stats.   If the state fails to give an examination, the sanction is not automatic discharge, but the offender may petition the court for discharge, and the court must discharge the offender unless it appears there is a necessity for further control.   This appeal involves the questions of: (1) Who has the burden at this hearing, and (2) Is the burden of proof "beyond a reasonable doubt" or a mere "preponderance of the evidence?"[2]   The trial court held that the state had the

---

[1] "Numerous sections of ch. 975, Stats., were repealed, recreated and amended by ch. 117, Laws of 1979. In particular, sec. 975.01, Stats., was repealed and recreated so that it now provides that no person may be committed under ch. 975 after the effective date of the new law, which is July 1, 1980, or the day after publication, whichever is later." *State ex rel. Terry v. Percy,* 95 Wis.2d 476, 479 n. 1, 290 N.W.2d 713, 715 (1980) (*Terry* III).

[2] Originally, it was argued by the offender that the state had no right to appeal the order of discharge. The offender thereafter conceded the state's right to appeal. The issue is, therefore, no longer before this court. We note our agreement with the parties, however, that the state has a right to appeal this case. Section 808.03(1), Stats., provides that any final order may be appealed as a matter of right to the court of appeals unless expressly provided by law. A commitment pursuant to ch. 975 is not a criminal action although it is triggered as a result of a criminal act. *See* secs. 975.06, 975.07, 975.11, 975.15 and 975.16,

burden of proof and that the burden was to establish the need for control beyond a reasonable doubt. Holding that the state had not met its burden, the trial court discharged Hanson. We reverse and hold that while the state has the burden of proof, its burden is only to establish the need for control to a preponderance of the evidence.

Before discussing the main issues in this appeal, one initial contention is raised by the state. The state claims there was, in fact, a periodic examination; therefore, the trial court had no reason to entertain Hanson's petition for order of discharge. The trial court ruled that the state had waived this issue because the Department of Health & Social Services wrote a letter to the court, prior to trial, admitting that an examination had not taken place. The state remained silent on the matter until trial when the district attorney tried to raise the issue. The trial court ruled that the matter had been untimely raised. The state claims the department's letter only admitted that there was no hearing conforming to the standards of *State ex rel. Terry v. Schubert,* 74 Wis. 2d 487, 247 N.W.2d 109 (1976) (*Terry* I).[3]

Stats. While limitations on the state's right to appeal exist in criminal actions, (*see State v. Rabe,* 96 Wis.2d 48, 291 N.W.2d 809 (1980)), we can find no authority that would prevent the state from appealing in this case. *See* sec. 974.05, Stats.

[3] *State ex rel. Terry v. Schubert,* 74 Wis.2d 487, 247 N.W.2d 109 (1976) rehearing), better known as *Terry* I, held that the following minimal due process rights were applicable to the periodic examination procedure provided by sec. 975.09, Stats.:

"(1) written notice of the hearing; (2) disclosure of the evidentiary material which will be considered by the hearing body; (3) opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine witnesses, in the absence of good cause for not allowing confrontation; (5) a neutral and detached hearing body; and (6) a written statement by the factfinders as to the evidence relied on and reasons for refusing discharge. *See Morrissey v. Brewer,*

■ We reject the state's argument. When the petition was first brought to the trial court's attention, the trial court wrote the state giving it twenty days to respond. No motion for dismissal on the basis of lack of jurisdiction of the person was forthcoming—just a letter. This is a civil proceeding, and, unless specifically noted otherwise, ch. 800 of our civil procedure code governs the procedural administration of this case. Section 802.06, Stats., requires such a defense to be raised either in a pleading by motion for judgment on the pleading or by motion pursuant to a scheduling order. Also required is that any response ordered by the court be served within twenty days after service of the order. The defense of lack of jurisdiction over the person is considered waived if it is neither made by motion nor included in the responsive pleading. *See* sec. 802.06(8), Stats. No motion alleging a lack of jurisdiction over the offender having been properly raised, the issue is waived. Having disposed of this preliminary issue, we will now turn to the major issues raised on this appeal.

## BURDEN OF PROOF

■ The issue dealing with which party has the burden of proof is best decided by use of the five factor analysis outlined in McCormick, *Evidence* §337, pp. 788–89 (2nd Ed. 1972), and adopted by the Wisconsin Supreme Court in *State v. McFarren,* 62 Wis.2d 492, 499–503, 215 N.W. 2d 459, 463–65 (1974). The five factors, though not

*supra,* [408 U.S. 471] at 489." *Terry* I, *supra,* at 502a–502b, 247 N.W.2d at 114.

These minimal due process rights were subsequently modified in *State ex rel. Terry v. Percy,* 95 Wis.2d 476, 290 N.W.2d 713 (1980) (*Terry* III).

listed in the same particular order as in *McFarren,* are:
(1) special policy considerations; (2) the judicial esti-
mate of probabilities; (3) convenience; (4) the fairness
factors, and (5) the natural tendency to place the bur-
dens on the party desiring change.

### 1. Special Policy Considerations

The reason for the periodic examination is to review
commitment between the time the offender is initially
committed and expiration of the maximum term of in-
carceration. *State ex rel. Terry v. Schubert, supra,* at
494, 247 N.W.2d at 112 *(Terry* I). The legislature pro-
vided that the department shall discharge any person
committed to it under the Sex Crimes Law "as soon as
in its opinion there is a reasonable probability that he
can be given full liberty without danger to the pub-
lic . . . ." Sec. 975.11, Stats. The state may not con-
stitutionally continue an involuntary commitment with-
out due process of law. *O'Connor v. Donaldson,* 422 U.S.
563, 575 (1975); *Jackson v. Indiana,* 406 U.S. 715, 738
(1972); *State ex rel. Terry v. Schubert, supra,* at 495,
247 N.W.2d at 113 *(Terry* I). Due process basically re-
quires that the state afford the opportunity to be heard
at a meaningful time and in a meaningful manner. *Terry*
I, *supra.*

When a periodic examination is held, it is for the pur-
pose of justifying continued commitment. By not hold-
ing a periodic examination, the inference is raised that
there is no public interest in continuing the commitment.
Thus, although ordinarily there would be no right to
release, the state's inaction creates the possibility that
the need for confinement may no longer exist. The state
has failed to provide the minimum due process periodic
examination which would ordinarily provide the basis

for continued denial of liberty. *State ex rel. Terry v. Percy,* 95 Wis.2d 476, 290 N.W.2d 713 (1980) (*Terry* III). When the minimum due process procedure is dispensed with, the state must answer for its inaction in court. There is a lack of fair play involved when due process is denied. Not holding the periodic examination should be a disfavored practice unless the state truly feels the offender is ready for discharge. If we were to give the burden to the offender, we would be denigrating the importance of the periodic examination. The state could discontinue giving periodic examinations altogether. This would force the offender into court in order to get the due process hearing constitutionally mandated. The state could defer giving any reason for its refusal to give an examination pending production of a *prima facie* case by the offender. If the offender could not produce sufficient evidence, the state then would gain dismissal and would be able to further control the offender without having to disclose anything. We cannot sanction such a result.

We conclude that the normal course of events has been disrupted by the state because of its failure to hold an examination. The inference we draw and the inference we believe that the legislature draws by its language is that the offender is to be discharged unless the state shows good reason for the trial court to rule otherwise.

## 2. Convenience

The state, with an interest in rehabilitating the offender, has the facts at its command. The state also is able to provide the court with information in support of its belief that further control is necessary.

[T]he decision to discharge a person from commitment is a discretionary decision which depends on numerous elements, some of which are factual, but many of which are subjective appraisals by the department. The decision to discharge may be made for several reasons and may involve nothing more than an informed prediction as to what would best serve to protect the public or promote the welfare of the sex offender. *State ex rel. Terry v. Percy, supra,* at 481–82, 290 N.W.2d at 716 (*Terry* III).

The state has the means by which to disclose the factors which justify continued commitment; it has the documentary evidence; it has the staff which is involved in the direct care, treatment and supervision of the offender, and it has the file and pertinent parts thereof in its possession. We believe that the facts for determining the necessity of further control are more properly in the hands of the state, and it should be the state's burden to come forward and disclose them.

### 3. Judicial Estimate of Probabilities

■

The *McFarren* court quoted McCormick who defined this factor as follows:

Perhaps a more frequently significant consideration in the fixing of the burdens of proof is the judicial estimate of the probabilities of situation. *The risk of failure of proof may be placed upon the party who contends that the more unusual has occurred.* [Footnote omitted.] [Emphasis added.] *State v. McFarren, supra,* at 503, 215 N.W.2d at 465, quoting McCormick, *Evidence* §337, p. 787 (2d ed. 1972).

The usual event is that the periodic examination will be held unless there is no further need to control. The unusual event is that the examination has not been given but there still exists a further need for control. The

state is contending the more unusual event has occurred. There may be, in fact, a valid reason why this unusual event has taken place, and there may be, in fact, a need for further control. The state, however, in contending the unusual event has occurred, should be obligated to bear the burden.

### 4. Fairness Factors

The fairness factors are twofold. One is called "proof of exceptions," and the other is "proof of negatives." Proof of exceptions has been defined as a rule that: "One who relies on an exception to a general rule or statute has the burden of proving that the case falls within the exception." *State v. McFarren, supra,* at 502, 215 N.W.2d at 465, quoting 31A C.J.S. *Evidence* §104, p. 173. In reviewing sec. 975.09, Stats., we note that failure to conduct a periodic examination entitles an offender to petition for discharge, which discharge shall be granted "unless it appears in accordance with s. 975.13, Stats., that there is a necessity for further control." The "unless" clause is an exception to the statutory command that the offender be discharged upon failure to hold a periodic examination. The exception is part of the enacting clause of the statute. Because of the policy reasons which we have already discussed favoring placing the burden of proof upon the state, we deem this language to be expressive of the legislature's intent to afford the state an opportunity to prove an exception to the statutory command. We note that the definition of the word "unless" is "except." Webster's New Collegiate Dictionary 1280 (1977). We conclude that this factor is supportive of a holding that the state should bear the burden of proof.

The second fairness factor, proof of negatives, is defined as follows: "[T]he party asserting the negative has the burden to prove it unless the facts are peculiarly within the other party's knowledge or are much more difficult for the former to prove than the latter." (Footnote omitted.) *State v. McFarren, supra,* at 503, 215 N.W.2d at 465. We have no trouble in holding that the state is faced with the assignment of asserting the negative. Only the state has the facts necessary to explain why it is still in the public's interest to retain the offender despite the fact that no periodic examination was held.

### 5. The Natural Tendency to Place the Burdens on The Party Desiring Change

The state argues that this is the determinative factor. The policy behind this factor is to assign the burden to the party seeking change in the present state of affairs. *McFarren, supra,* at 499, 215 N.W.2d at 463; McCormick, *supra,* at 786. The moving party usually has the burden of proof, especially in administrative proceedings. *Id.* Since sec. 975.09, Stats., places the task of requesting the hearing upon the offender, the state argues that the offender is the party desiring to interrupt the normal course of commitment by bringing the petition. Our previous discussion of the other factors overrides this factor. Moreover, we reject the assertion that this factor is even supportive of the state's position. The normal course of events is to conduct a periodic examination. It is the state which has disrupted the normal course of events by not holding the examination. The state must answer for it.

## STANDARD OF PROOF

The second issue deals with the standard of proof. As the trial court pointed out, the law is not precise regarding the standard of proof for a sec. 975.09, Stats., proceeding. The law is more precise, however, for two other types of hearings dealing with the Wisconsin Sex Crimes Law. For the initial commitment hearing after conviction, the standard is the preponderance of the evidence. *Goetsch v. State,* 45 Wis.2d 285, 294, 172 N.W.2d 688, 692 (1969). For extension of commitment past the date of mandatory release, the standard suggested by the Jury Instruction Committee is beyond a reasonable doubt. *See* Wis J I—Criminal, Part II, 1553. The trial court apparently considered the sec. 975.09 hearing to be analogous to continuance of control situations and, therefore, held that the standard of proof was "beyond a reasonable doubt." The need is for us to analyze why the initial commitment hearing has a different burden of proof than the continued commitment hearing. Then we must determine whether the basis for the lower standard of proof in the initial commitment hearing is applicable to the 975.09 hearing.

The comment of the Jury Instruction Committee to its instruction 1553 explains the reason for its variation in standards of proof between an initial commitment hearing and a continuance of control hearing, stating that it is:

[N]ot required to apply "beyond a reasonable doubt" standard to the issue of commitment under the Sex Crimes Law . . . because the fact of criminal conviction offered a rational basis for using a less stringent burden of proof. But in the continuance of control situation, the defendant has served the sentence authorized by the criminal law and the effect of the criminal conviction in justifying departure from the procedure applicable to civil commitments is greatly diminished. The issue on

continuance of control under the Sex Crimes Law is so similar to the issue on involuntary civil commitment that the Committee feels it would be a denial of equal protection to employ a different burden of proof. Wis J I—Criminal, Part II, 1553 n. 3.

The Jury Instruction Committee echoed the reasoning of the supreme court in *Goetsch v. State, supra,* at 94, 172 N.W.2d at 692 (1969), explaining why the lower standard of proof attended the initial commitment proceeding. The defendant has already been found guilty. He will lose his liberty either in prison or as an offender under the Sex Crimes Law. The offender's liberty is not at issue. Rather, the issue is merely whether treatment and protection of the public is necessary.

On the other hand, in a continuance of control hearing, the maximum sentence has already been served. Normally, the offender would now be free to rejoin society. Yet, if the state feels the offender's liberty is dangerous to the public, the state may seek to further restrain this liberty. This is where the clash between a legitimate liberty interest and the state interest in restraining liberty comes into central focus. As stated by this court in *State v. Cramer,* 91 Wis.2d 553, 559, 283 N.W.2d 625, 628 (Ct. App. 1979):

We view the provisions of secs. 975.13 and 975.14(2), Stats., prescribing the review of a departmental opinion that discharge of a committed sex crime offender from the control of the Department would be dangerous to the public, as presenting to the jury the question whether the Department should extend the institutionalization of the person committed. We reach that conclusion because the Department's opinion is triggered by sec. 975.12, Stats., when the offender approaches either his mandatory release or discharge date. Only those dates present points of time at which the statutory right to release clashes with a contrary departmental opinion to extend control. It is at the point of the clash between the right to release and a contrary department opinion that the

legislature has prescribed a legal system determination whether the public's right to confinement of the offender transcends his right to release. [Footnotes omitted.]

The liberty interest is the reason why the jury instruction committee viewed Mental Health Act, ch. 430, Laws of 1975, as providing for proof "beyond a reasonable doubt" in all civil commitment proceedings where continuance of control was the issue. See sec. 51.20(12) and 51.20(14)(e), Stats.

We do not view sec. 975.09, Stats., as parallel to the continuance of a control situation. Termination of institutionalization is not the single theme of review as it is in a sec. 975.13, Stats., or a sec. 975.14(2), Stats., action. In a continuance of control situation, the person committed has a valuable "interest in release from commitment, once the *basis for that commitment no longer exists . . . .*" (Emphasis added.) *State ex rel. Terry v. Schubert, supra,* at 497, 247 N.W.2d at 114.

The basis in a 975.09 hearing still exists. In this case, the defendant has been found guilty of rape. Under the laws existing at the time of the offense, the offender, Hanson, could have been sentenced to a term of up to thirty years. Because he was in need of specialized treatment, however, he was instead committed under the Wisconsin Sex Crimes Law. His actual commitment has, so far, been shorter than the maximum period of incarceration. Hanson cannot claim that he has a liberty interest in the context of the state's trying to extend control past his normal release date.

It need not should not be necessary that the "beyond a reasonable doubt" standard be applied. The conviction is still valid; the period of maximum incarceration has not expired, and, therefore, there is no clash between the right to release and a contrary department opinion that the public's right to confinement of the offender tran-

scends his right to release. Rather, "the discharge from commitment with which we are concerned involves a denial to the committee of a conditional liberty which he desires, not a deprivation of liberty which he already has." *State ex rel. Terry v. Percy*, 95 Wis.2d 476, 481, 290 N.W.2d 713, 716 (1980) (*Terry* III). We find particularly instructive the quote of Judge Henry Friendly that: "[T]here is a human difference between losing what one has and not getting what one wants." Friendly, *Some Kind of Hearing*, 123 U. Pa. L. Rev., 1267, 1296 (1975), quoted with approval in *Greenholtz v. Nebraska Penal and Correctional Complex*, 442 U.S. 1, 10 (1979).

We do not see the indispensability of the reasonable doubt standard in a 975.09 hearing that we would see in deprivation of liberty cases. As stated in *In re Winship*, 397 U.S. 358, 363–64 (1970), there are several reasons for assigning a "beyond a reasonable doubt" burden. These reasons are: (1) because the individual defendant has at stake an interest of immense importance, both in terms of the possibility that he will lose his liberty and that he would be stigmatized by the conviction; (2) because a moral force of the criminal law would be diluted if the public was in doubt whether innocent men were being convicted, and (3) because every individual going about his ordinary affairs should have confidence that the government cannot judge him guilty of a criminal offense without convincing the fact finder of his guilt with utmost certainty. None of the *In re Winship* criteria apply in a sec. 975.09 hearing thus requiring a "beyond a reasonable doubt" standard. In a sec. 975.09 hearing, although the offender does possibly have a conditional liberty interest at stake, he has no absolute right to liberty. He only gains that right after having been committed for the maximum term of incarceration. So, the liberty interest discussed in the *In re Winship* case is not apposite to the conditional liberty interest

being tested in a 975.09 process. Also, the offender in a 975.09 hearing is not stigmatized by a continued restraint on his liberty; rather, he is stigmatized by the state's inability or reluctance to have given him his due process periodic examination. Finally, we do not have a need to reduce the risk of a conviction resting on factual error, but the need is instead to bring the facts out into the open. We conclude the reasons for using the "beyond a reasonable doubt" standard are inapplicable. We feel that the preponderance of the evidence standard is applicable.

The 975.09 hearing is designed to promote the standard of fair play. It is a sanction supplied by the legislature for the state's failure to hold a periodic examination. Because the offender's due process rights to an examination were not afforded, the state should be required to appear before the committing court and justify its actions. The inference the court may accept is that the state no longer has an interest in retaining the offender. That is an inference which must be overcome by the state.

A failure to provide a hearing is good reason to justify that some kind of inquiry should be made by a "neutral fact-finder." See Parham v. J. R., 442 U.S. 584 (1979). Only then can we be assured that the basic elements of fairness and equity are being observed. The state must prove that its action in failing to give a periodic examination was not capricious. To do so, the state has an obligation to justify its action publicly because only such action, before the committing court, will provide the assurance critical to the appearance of fairness. Thus, upon a showing that there is essential evidence which satisfies the court to a reasonable certainty by the great weight of the evidence that there is a need for further control of the offender and that the action of the state was not capricious, the state will have proven its case. Because the fact of the criminal conviction offers a

rational basis for using the less stringent burden of proof, the effect of the criminal conviction justifies departure from the procedure applicable to those cases where a person's absolute liberty is in danger.

An additional reason for deciding that the civil standard applies comes from our review of the legislative history. Prior to the Mental Health Act of 1975, all civil commitments and sexual deviancy commitments were based on the same civil burden requiring proof to "a reasonable certainty by the great weight of the credible evidence." *Syvock v. State,* 61 Wis.2d 411, 418–19, 213 N.W.2d 11, 15 (1973) ; *Goetsch v. State, supra.* In 1975, the Mental Health Act amended the civil commitment procedure to conform to *Lessard v. Schmidt,* 349 F. Supp. 1078 (E.D. Wis. 1972). The legislature specifically drew a parallel between chapter 51, Stats., actions where a person's liberty is being taken away and petitions for reexamination following a continuance of control hearing where continuance of control has already been previously ordered. *See* sec. 975.15(3), Stats. The legislature did not, however, take any position respecting 975.09 actions and did not change the burden of proof for the initial commitment proceedings. Therefore, *Goetsch* is still the law with respect to any commitment proceedings not specifically changed by the legislature. As stated in *Zimmerman v. Wisconsin Electric Power Co.,* 38 Wis.2d 626, 634, 157 N.W.2d 648, 651 (1968), "[t]he legislature is presumed to know that in absence of its changing the law, the construction put upon it by the courts will remain unchanged; . . . ." We also note the language of 2A Sutherland, *Statutory Construction* §51.02, at 290 (4th ed., Sands, 1973), that was adopted in *State v. Hungerford,* 84 Wis.2d 236, 252, 267 N.W.2d 258, 266–67 (1978), where it was stated that:

It is assumed that whenever the legislature enacts a provision it had in mind previous statutes relating to the same subject matter, wherefore it is held that in the

absence of any express repeal or amendment therein, the new provision was enacted in accord with the legislative policy embodied in those prior statutes, and they should all be construed together.

Moreover, it was expressly recognized in *State v. Hungerford, supra,* that all the provisions of civil commitment were not meant to apply to hearings for continuance of control over a sexual deviate. The legislature has not acted in the specific area in question, and it is entitled to presume that the standard of proof remains the same with respect to any commitment proceedings it has not changed.

We, therefore, conclude the state's burden of proof is to satisfy the court to a reasonable certainty by the greater weight of the credible evidence.

*By the Court.*—Order reversed and cause remanded for a new hearing.