STATE of Wisconsin, Plaintiff-Respondent,

v.

Ivan L. HIGGINBOTHAM, Defendant-Appellant.†

Court of Appeals

No. 82–309–CR. Submitted on briefs November 11, 1982.—Decided
December 27, 1982.
(Also reported in 329 N.W.2d 250.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Louis B. Butler, Jr.,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Michael R. Klos,* assistant attorney general.

Before Decker, C.J., Moser, P.J., and Wedemeyer, J.

DECKER, C.J.   Ivan L. Higginbotham appeals from an order dismissing his petition for discharge from commitment under the Wisconsin Sex Crimes Law, ch. 975, Stats.   Higginbotham alleges that the admission of certain evidence and the absence of certain jury instructions deprived him of due process and a fair trial, and that the evidence was insufficient to support a finding that he was dangerous.   We conclude that the trial court did not err in its evidentiary and procedural rulings and that sufficient evidence was properly admitted which supports the jury's determination that Higginbotham was dangerous and the trial court's order that commitment should continue.   We therefore affirm.

Higginbotham was convicted of indecent liberties with a child and endangering safety by conduct regardless of

life. He was committed to the Department of Health and Social Services (department) pursuant to sec. 975.06, Stats., in 1976. After the department failed to provide a required periodic examination of him, Higginbotham filed a petition for discharge with the circuit court as provided in sec. 975.09, Stats. The case was tried to a jury which found that Higginbotham was dangerous to the public because of mental or physical deficiency, disorder or abnormality, pursuant to sec. 975.09(3), and the trial court therefore entered an order that he not be discharged. Agent Joseph Coffey, who had supervised Higginbotham's parole since April 15, 1981, was the only witness presented by the state at this hearing.

Higginbotham has presented five issues to be addressed on appeal. These are:

(1) Was Higginbotham denied due process and his rights of confrontation and cross-examination by the introduction of hearsay testimony through probation agent Coffey?;

(2) Did the trial court improperly refuse to admit evidence of the department's failure to provide Higginbotham with a periodic examination?;

(3) Was Higginbotham denied a fair trial because of the content of the prosecutor's closing argument to the jury?;

(4) Should the trial court have given a missing witness instruction?; and

(5) Is the evidence insufficient to support the jury's determination that Higginbotham is dangerous?

We answer all of these questions in the negative and will address each separately.

## DUE PROCESS AND CONFRONTATION

At the discharge hearing, Agent Coffey testified that records from Central State Hospital indicated that Hig-

ginbotham had a past history of serious alcohol abuse. Coffey also used notes which he had prepared which traced Higginbotham's history of incomplete placement in several alcohol and drug abuse programs. Coffey was also allowed to read a presentence report to the jury which had been prepared by another party in 1976, that described the offenses committed by Higginbotham and included statements wherein Higginbotham admitted to being under the influence of drugs and alcohol when those offenses were committed.

On appeal, Higginbotham contends that his rights to due process and to confront and cross-examine witnesses were violated when Coffey's hearsay testimony was allowed into evidence. We disagree and affirm.

As delineated by our supreme court in *State ex rel. Terry v. Percy,* 95 Wis. 2d 476, 482, 290 N.W.2d 713, 716 (1980), the minimum due process requirements for re-examination of a sex crimes commitment between the time of the initial commitment and the expiration of the maximum time include:

(1) prior written notice of the examination.

(2) disclosure of the factors which will be considered by the decision maker.

(3) opportunity to be present and make oral or written statements and present documentary evidence.

(4) decision maker to be a person not involved in the direct care, treatment, or supervision of the sex offender.

(5) a record of the proceedings must be maintained, as provided in sec. 975.09, Stats.

(6) a written decision to be given to the sex offender stating the reasons for the decision.

(7) review by the department of a decision at the request of the sex offender.

These minimal rights are applicable to the periodic examination procedure provided under sec. 975.09, Stats. *Id.* Even when the court rather than the department does

the evaluation, "the essence of the procedure is still within the ambit of sec. 975.09 . . . ." *State v. Hanson,* 100 Wis. 2d 549, 562, 302 N.W.2d 452, 458 (1981).

While *State ex rel. Terry v. Schubert,* 74 Wis. 2d 487, 247 N.W.2d 109 (1976), *vacated,* 434 U.S. 808 (1977), included in the list of sec. 975.09, Stats., minimal due process rights, "the right to confront and cross-examine witnesses, in the absence of good cause for not allowing confrontation," *id.* at 502b, 247 N.W.2d at 114, this language was not included in the list of requirements in the later *Percy* case. *Percy, supra,* 95 Wis. 2d at 482, 290 N.W.2d at 716. The court in *Percy* stated that, in light of *Greenholtz v. Inmates of Nebraska Penal Complex,* 442 U.S. 1 (1979), the process due is less stringent than the procedures adopted in *Schubert. Percy, supra,* 95 Wis. 2d at 481, 290 N.W.2d at 716. We read *Percy,* then, as not mandating confrontation or cross-examination in a sec. 975.09, Stats., hearing.

Our supreme court in *Hanson, supra,* 100 Wis. 2d at 562–63, 302 N.W.2d at 459, found the liberty interest at stake in a defendant-initiated petition to be the same as is at stake in a department-initiated one, as in *Percy.* While the liberty interest at stake in a sec. 975.09, Stats., hearing is not absolutely identical to that in a parole setting, the two are comparable and compatible. *See id.* at 560–63, 302 N.W.2d at 457–59.

Our research has revealed no post-*Percy* Wisconsin case law which discusses the legal formality utilized in a sec. 975.09, Stats., hearing. However, under the similar circumstances presented in a parole revocation, where due process requires only a limited hearing in light of the conditional liberty at stake, our supreme court has stated that the "technical rules of evidence need not be observed." *State ex rel. Johnson v. Cady,* 50 Wis. 2d 540, 549, 185 N.W.2d 306, 311 (1971). Further, *Cady* quoted with approval *Johnson v. Stucker,* 453 P.2d 35, 42

(Kan.), *cert. denied,* 396 U.S. 904 (1969), for the proposition that "[a]ny relevant information, even though in the form of letters, reports of parole officers, and similar matter, which may aid the board in making its determination, may be considered . . . ." *Cady, supra,* 50 Wis. 2d at 549, 185 N.W.2d at 311.

Higginbotham argues that *State ex rel. Henschel v. DHSS,* 91 Wis. 2d 268, 271, 282 N.W.2d 618, 619 (Ct. App. 1979), requires that a parole revocation may not be proved entirely by unsubstantiated hearsay.[1] While this

---

[1] We note that in the recent case of *State ex rel. Thompson v. Riveland,* No. 81–1642, slip op. at 4 (Dec. 2, 1982), our supreme court noted that "it is apparent that the court of appeals meant 'unreliable hearsay' and not 'unsubstantiated hearsay' " in *State ex rel. Henschel v. DHSS,* 91 Wis. 2d 268, 271, 282 N.W.2d 618, 619 (Ct. App. 1979). We eschewed the term "reliable" because we did not wish it to be misinterpreted in the following fashion.

Legal and general dictionaries alike list "reliable" and "trustworthy" as synonymous. We know of no legal authority which distinguishes the two. This being so, "reliable hearsay" is therefore indistinguishable from "trustworthy hearsay." Trustworthy hearsay is admissible under the rules of evidence either under a specific hearsay exception (secs. 908.03(1)–(23), and 908.045(1)–(5), Stats.) or under the general hearsay exceptions (secs. 908.-03(24) and 908.045(6)). "The traditional hearsay exceptions are drawn upon for the exceptions, collected under two rules, one dealing with situations where availability of the declarant is regarded as immaterial and the other with those where unavailability is made a condition to the admission of the hearsay statement. Each of the two rules concludes with a provision for hearsay statements not within one of the specified exceptions 'but having comparable circumstantial guarantees of trustworthiness.' " Federal Advisory Committee's Note to sec. 908.01, Stats.

The effect of requiring "reliable/trustworthy hearsay" at a probation revocation hearing (and, by implication at parole and sec. 975.09, Stats., hearings) is to make the rules of evidence concerning hearsay applicable at these sorts of hearings, since, under *Thompson, supra,* at least some of the hearsay must be "reliable," and therefore, admissible under the rules of evidence. As such, it contradicts both statutory and case law. Sec. 911.01(4)(c), Stats; *State ex rel. Johnson v. Cady,* 50 Wis. 2d 540, 549, 185 N.W.2d

is an accurate statement of the law, we do not believe it is violated here. Not all of Coffey's testimony was hearsay. Some of Coffey's testimony was hearsay based upon hospital records and a presentence report, all of which were made available to defense counsel before the testimony was given.[2] While such evidence may be hearsay, it is not unsubstantiated.

When Coffey testified as to what Higginbotham had told him, his statement was substantiated to the degree that a reasonable and fair decision maker would repose confidence in his veracity, his powers of hearing and recall, and his lack of a motive to falsify. Such a statement is substantiated. When Coffey gave hearsay testimony from hospital records and the presentence report, although the underlying record or report may not contain sufficient indicia of trustworthiness to make it admissible under a hearsay exception, the fact that the statement was indeed made can be substantiated by the record or report itself. Such hearsay is substantiated.

If, on the other hand, Coffey had testified that another parole agent had told him that he was told something by a friend of Higginbotham's, such a statement would be unsubstantiated. The statement is remote enough from the alleged incident so as to be entitled to very little, if

306, 311 (1971); see *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972); see also *State ex rel. Tyznik v. DHSS*, 71 Wis. 2d 169, 172, 238 N.W.2d 66, 68 (1976).

[2] We note that Coffey's file was only made available to defense counsel at the time of trial. We do not approve of this practice. However, insofar as Higginbotham alleges surprise, we note that he does not argue on appeal, nor can we find in the record, that a motion for a continuance was made. A continuance is a more appropriate remedy for surprise than is the exclusion of the witness. *Meurer v. ITT Gen'l Controls*, 90 Wis. 2d 438, 455, 280 N.W.2d 156, 164 (1979). Failure to grant a continuance is not improper where no request was made. *In re D.H.*, 76 Wis. 2d 286, 300, 251 N.W.2d 196, 204 (1977).

any, credence. A reasonable and fair decision maker (whose goal should be a reliable decision) ought not predicate a decision entirely upon evidence so remote as to be unsubstantiated. *See id.* But such is not the case here.

The express exclusion of the right to confront and cross-examine witnesses from the minimal due process enumerated in *State ex rel. Terry v. Percy, supra,* coupled with relaxation of formal rules of evidence in parole hearings which involve an analogous liberty interest, leads us to conclude that neither the due process rights nor the confrontation rights of Higginbotham were violated in this proceeding.

## EVIDENCE OF STATE'S FAILURE TO PROVIDE A PERIODIC EXAMINATION

The trial court refused to admit any evidence of the department's failure to provide the defendant with the periodic examination required by sec. 975.09, Stats. The defendant contends on appeal that this evidence was crucial and relevant, and that its exclusion violated his due process rights to present testimony and warrants a new trial.

Higginbotham contends that the state's failure to provide a periodic examination raises an inference which he should have been allowed to bring into evidence. We disagree.

Higginbotham's argument is based upon language in *State v. Hanson,* 98 Wis. 2d 80, 86, 295 N.W.2d 209, 213 (Ct. App. 1980), *aff'd,* 100 Wis. 2d 549, 302 N.W.2d 452 (1981), in which this court noted that, "[b]y not holding a periodic examination, the inference is raised that there is no public interest in continuing the commitment." To

draw from that language the idea that the inference spoken of is an evidentiary one entitled to exposure at trial is to misread it.

That language is taken from a discussion of special policy considerations concerning burden of proof, the determination of which is a question of law. An evidentiary inference is "a truth or proposition drawn from another which is supposed or admitted to be true." Black's Law Dictionary 700 (5th ed. 1979). The inference in *Hanson*, however, is merely reasoning: the state's inaction implies the possibility that the need for confinement may no longer exist. As a result, "the state must answer for its inaction in court." *Hanson, supra*, 98 Wis. 2d at 87, 295 N.W.2d at 213. All this means is that the state must come to court if it seeks to have commitment continued. It is reasoning alone; no evidentiary inference arises. The critical issue to be resolved at trial was the defendant's condition and the danger which he posed to the public. In light of the other evidence presented at trial, the failure of the department to conduct the periodic examination itself had minimal bearing upon the issue of dangerousness. Therefore, evidence relating to the department's failure to examine the defendant did not affect a substantial right of Higginbotham's and no error can be predicated upon it. Sec. 901.03(1), Stats. For the reasons set forth above, the evidence was not critical to Higginbotham's defense; we therefore reject his corollary argument based on *Chambers v. Mississippi*, 410 U.S. 284 (1973).

## CLOSING ARGUMENT BY PROSECUTION

During closing argument to the jury, the prosecutor stated that the defendant's petition for discharge amounted to a denial by Higginbotham that he had any problems. Defense counsel objected to this argument and re-

quested a cautionary instruction which would inform the jury that the petition was filed only after the department failed to examine Higginbotham. The trial court refused this request, just as it had refused to admit any evidence concerning the periodic examination. On appeal, Higginbotham argues that he was denied due process when the jury was permitted to accept what he contends was an incorrect inference. There is no merit to this contention.

Our supreme court has noted that counsel should be allowed considerable latitude in closing argument, and, more specifically, that "[t]he aim of the prosecutor in a judicial inquiry should be to analyze the evidence and present facts with a reasonable interpretation to aid the jury in calmly and reasonably drawing just inferences and arriving at a just conclusion upon the main or controlling questions." *State v. Draize*, 88 Wis. 2d 445, 454, 276 N.W.2d 784, 789 (1979), quoting *State v. Genova*, 242 Wis. 555, 561, 8 N.W.2d 260, 263 (1943).

■

Higginbotham filed a petition for discharge because the department did not conduct the required periodic examination. The petition explicitly averred that he has benefited from treatment, is no longer dangerous, and is no longer in need of specialized treatment. Therefore, the prosecutor's inference that Higginbotham's petition was a denial of problems was nothing but a gloss upon the petition itself, particularly since Agent Coffey testified that Higginbotham had refused to acknowledge his alcohol and drug problem.

Higginbotham also asserts error in the trial court's refusal to give a curative jury instruction to correct the state's closing argument "that Higginbotham's petition was a denial that there were any problems." We find no error.

■

A trial court has broad discretion as to jury instructions. If the instructions given adequately cover the law

applicable to the facts, this court will not find error in the refusal of special instructions even though the refused instructions themselves would not be erroneous. *State v. Lenarchick,* 74 Wis. 2d 425, 455, 247 N.W.2d 80, 96 (1976).

■

As noted above, the jury's lack of knowledge of who filed the petition was irrelevant to Higginbotham's case. We therefore find no abuse of discretion in the trial court's refusal to give a jury instruction concerning that point.

## MISSING WITNESS INSTRUCTION

The department sought to establish Higginbotham's alcohol and drug abuse problem solely through the testimony of Agent Coffey. Alleging that Coffey was not competent to render this testimony, Higginbotham maintains on appeal that the department did not meet its burden of proof (discussed below) and that the trial court should have given the missing witness instruction as requested. In this case, this instruction was unnecessary.

■

Noting that a missing witness instruction should be narrowly construed so as to apply only where the failure to call a witness leads to a reasonable conclusion that the party is unwilling to allow the jury to have the full truth, our supreme court has explained that:

The failure of a party to call a witness under its control is probative only if the opposing party has made a showing that there is a reasonable relationship between the failure to produce the witness and the inference that the testimony, had it been placed before the jury, would have been unfavorable to the party's cause. *Featherly v. Continental Insurance Co.,* 73 Wis. 2d 273, 282, 243 N.W. 2d 806 (1976). . . . It is the establishment of the rea-

sonableness of this inference which controls whether testimony relating to the absent witness and the instructions are proper. *State v. Sarinske*, 91 Wis. 2d 14, 53–54, 280 N.W.2d 725, 743 (1979). [Citation omitted.]

Here, we are not persuaded that Higginbotham has established a reasonable inference that the additional testimony sought would have been unfavorable to the state's case. The basis for the inference was argued to the trial court and rejected; it is not raised in Higginbotham's briefs on appeal. We find no error in the trial court's refusal to give a missing witness instruction.

## SUFFICIENCY OF THE EVIDENCE

In a sec. 975.09, Stats., discharge proceeding the state has the burden of proving dangerousness by a preponderance of the evidence. *State v. Hanson, supra*, 100 Wis. 2d at 566, 302 N.W.2d at 460. Higginbotham maintains on appeal that the state did not meet its burden since the evidence introduced was insufficient as a matter of law to warrant the dismissal of the petition. We disagree.

The basis for this argument on appeal is again that Coffey's testimony was hearsay. Having held that the admission of Coffey's testimony was not error, we note that this argument addresses weight and credibility more than sufficiency of the evidence. Weight and credibility are matters for the trier of fact and will not be disturbed where more than one reasonable inference can be drawn from the evidence. *Meurer v. ITT General Controls*, 90 Wis. 2d 438, 450, 280 N.W.2d 156, 162 (1979).

Agent Coffey testified that Higginbotham's alcohol and drug abuse continued throughout his period of parole supervision, that he did not complete several programs which may have helped him, and that while on parole Higginbotham had been involved in several violent inci-

dents while intoxicated. Agent Coffey concluded that Higginbotham would pose a danger to the public if discharged from department control. The trial court adequately cautioned the jury that Coffey was expressing an opinion based on experience and that the jury was free to disregard it. The evidence presented, in conjunction with Coffey's professional judgment, afforded the jury a sufficient basis upon which to conclude that Higginbotham was dangerous to the public. The jury concluded from the credible evidence before it that Higginbotham was still dangerous; the finding was based on sufficient evidence and is reasonably supported by the record.

The order which implemented that jury verdict and denied Higginbotham's petition for discharge is affirmed.

*By the Court.*—Order affirmed.